1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9   Demetrio Acosta Urtusuastegui,              No. CV-13-02110-PHX-NVW (BSB)

10                Petitioner,                    **REPORT AND**
                                                 **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                Respondents.

14

15          Demetrio Acosta Urtusuastegui (Petitioner) has filed a timely Petition for Writ of

16   Habeas Corpus, pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Respondents have filed an

17   Answer asserting that Petitioner's claims are either not cognizable on habeas corpus

18   review or are procedurally barred, and that his claims lack merit.  (Doc. 7.)  Petitioner has

19   not filed a reply in support of his Petition and the time to do so has passed.  For the

20   reasons below, the Petition should be denied.

21   **I.      Procedural Background**

22          **A.      Charges, Trial, and Sentencing**

23          On July 23, 2007, Petitioner was indicted in the Maricopa County Superior Court

24   (trial court) on one count of first degree murder, two counts of attempted first degree

25   murder, three counts of kidnapping, one count of possession of marijuana for sale, and

26   one count of misconduct involving weapons.  (Doc. 7, Ex. A.)  The State also filed a

27   notice of its intent to seek the death penalty.  (Doc. 7, Ex. B.)

28

On November 17, 2010, Petitioner entered into a plea agreement and pleaded no contest to second degree murder, and the State dismissed all other charges.  (Doc. 7, Exs.  C, D, E.)  On January 21, 2011, in accordance with the plea agreement, the trial court sentenced Petitioner an aggravated sentence of twenty-two years' imprisonment. (Doc. 7, Ex. G.)

### B.    Post-Conviction Proceedings

On March 10, 2011, Petitioner filed a timely notice of post-conviction relief and the trial court appointed post-conviction counsel.  (Doc. 7, Exs. H, I.)  Post-conviction counsel (PCR counsel) subsequently filed a notice stating that she was unable to find any colorable issue to raise on post-conviction review, and requesting an extension of time for Petitioner to file a pro per petition.  (Doc. 7, Ex. J.)  Petitioner later filed a petition arguing that: (1) trial counsel "refused to honor" his request to withdraw the no contest plea and have the charges re-instated; (2) he was "misle[]d to believe that the evidence against him was irrefutable and he would rather proceed to trial and make the State prove every element of its case"; (3) and he wanted to withdraw his plea and proceed to trial with a "correct interpreter."  (Doc. 7, Ex. K.)  On October 25, 2011, the trial court dismissed the petition pursuant to Arizona Rule of Criminal Procedure 32.6(c), explaining the petition contained "mere generalizations and unsubstantiated claims."[1] (Doc. 7, Ex. N.)

Petitioner timely petitioned for review in the Arizona Court of Appeals (the court of appeals or appellate court).  (Doc. 7, Ex. O.)  On appeal, Petitioner raised essentially the same claims he had raised in his petition for post-conviction relief, but also asserted that the trial court abused its discretion by denying his petition for post-conviction relief, and that because he was a "Mexican national," he was "not required to know law."  (*Id.* at 2.)  On September 14, 2012, the appellate court denied relief.  (Doc. 7, Ex. Q.)  The

---

[1]  Rule 32.6(c), of the Arizona Rule of Criminal Procedure, states, in relevant part, "[i]f the court, after identifying all precluded claims, determines that no remaining claim presents a material issue of fact or law which would entitle the defendant to relief under this rule and that no purpose would be served by any further proceedings, the court shall order the petition dismissed."

appellate court explained that, as in the trial court, Petitioner "fail[ed] to set forth in any detail how counsel coerced him to accept a plea agreement or how the interpreter's purported difference in dialect affected his understanding of the proceedings."[2] (*Id.* at 3.) Additionally, the appellate court noted that the change-of-plea transcript showed that Petitioner affirmed that he understood the proceedings. (*Id.*) Thus, because Petitioner "ha[d] done nothing more than engage in unsupported speculation and attempt to contradict the record before us," the appellate court concluded that the trial court did not abuse its discretion in denying post-conviction relief. (*Id.* at 3-4.)

Petitioner petitioned for review in the Arizona Supreme Court, raising the arguments he made in the court of appeals. (Doc. 7, Ex. R.) On March 26, 2013, the Arizona Supreme Court denied review. (Doc. 7, Ex. S.)

## C.    Petition for Writ of Habeas Corpus

On October 15, 2013, Petitioner filed the pending Petition raising the following grounds for relief: (1) trial counsel was ineffective for failing to adequately advise him regarding the plea agreement and sentencing guidelines, and post-conviction counsel was ineffective for failing to "file a petition on his behalf" (Ground One(a) and Ground One(b)); and (2) his Sixth and Fourteenth Amendment rights were violated because Petitioner did not knowingly, voluntarily, and intelligently waive his right a jury trial (Ground Two). (Doc. 1 at 4-5.)

In Section II, below, the Court first addresses Petitioner's claim of ineffective assistance of post-conviction counsel, asserted in Ground One(b), and finds that this claim is not cognizable on federal habeas corpus review and, even if it were cognizable, he is not entitled to relief based on his conclusory allegations. In Sections III and IV, the Court sets forth the requirements for exhaustion and finds that Petitioner's ineffective assistance of counsel claims, asserted in Ground One(a), were properly exhausted, but

---

[2] The court of appeals also noted that Petitioner appeared to raise several new claims in his petition for review, including newly discovered evidence, ineffective assistance of counsel at sentencing, and ineffective assistance of counsel in investigating the case. (Doc. 7, Ex. Q at 3 n.2.) The court refused to consider these claims because they were not raised in the trial court. (*Id.*)

1  fail on the merits.  Finally, in Section V, the Court finds that Petitioner's claims in

2  Ground Two, in which challenges his waiver of a jury trial, were not exhausted and fail

3  on the merits.  Therefore, the Court recommends that the Petition be denied.

4  **II.    Ground One(b) — Ineffective Assistance of Post-Conviction Counsel**

5       **A.    Ground One(b) is Not Cognizable on Federal Habeas Corpus Review**

6       In Ground One(b), Petitioner argues that post-conviction counsel was ineffective

7  for refusing "to file a petition on his behalf."  (Doc. 1 at 4.)  Respondents argue that this

8  claim is not cognizable on habeas corpus review.  (Doc. 7 at 14.)  A criminal defendant

9  has no federal constitutional right to counsel in state post-conviction proceedings.

10 *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Absent such a right, "a petitioner

11 cannot claim constitutionally ineffective assistance of counsel in such proceedings."

12 *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *see also Martinez v. Ryan*, ___ U.S.__,

13 132 S. Ct 1309, 1320 (2012) ("There is no constitutional right to an attorney in state post-

14 conviction proceedings); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (1996) (stating that the

15 Supreme Court has "concluded there is no Sixth Amendment right to effective assistance

16 of counsel during state or federal habeas corpus proceedings").

17      Moreover, the federal statute providing for habeas corpus review of state

18 convictions prohibits claims based on the ineffectiveness of counsel during "State

19 collateral post-conviction proceedings."   28 U.S.C. § 2254(i) (stating that "[t]he

20 ineffectiveness or incompetence of counsel during Federal or State post-conviction

21 proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

22 Because Petitioner had no Sixth Amendment right to counsel for his state post-conviction

23 proceeding, he cannot claim ineffective assistance during those proceedings.

24 Additionally, the statute under which Petitioner brings his habeas petition prohibits him

25 from raising this claim.

26      **B.    Petitioner's Conclusory Allegations Are Insufficient**

27      Although there is no Sixth Amendment right to effective assistance of post-

28 conviction counsel, *Moormann v. Schriro*, 426 F.3d 1044, 1058 (9th Cir. 2005), a

criminal defendant is entitled to effective assistance of counsel on his first appeal as of right.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985) (holding that the Sixth Amendment right to the effective assistance of counsel applies to the first appeal of right).

Because Petitioner was convicted pursuant to a plea, he waived his right to a direct appeal under Arizona law.  *See* Ariz. Rev. Stat. § 13-4033(B).  However, he retained the right to seek collateral review pursuant to Rule 32.  *See* Ariz. R. Crim. P. 32.1 and 32.4.  Consequently, his first, and only, post-conviction proceeding was a Rule 32 "of-right" proceeding, which the Ninth Circuit has recognized as a "form of direct review."  *See Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007) (concluding "that Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A).").  Accordingly, Petitioner arguably had the right to the effective assistance of counsel in his Rule 32 of-right proceeding.  *See Ramon v. Ryan*, 2010 WL 3564819, at *11 (D. Ariz. Jul. 23, 2010) (citing *Evitts* for the proposition that a defendant has a right to the effective assistance of counsel in a Rule-32 of right proceeding in Arizona).

The Court, however, need not resolve this issue because, even if Petitioner's claim of ineffective assistance of PCR counsel were cognizable on § 2254 review, he is not entitled to relief on that claim.  Petitioner's claim of ineffective assistance of PCR counsel consists of the statement that "Petitioner requested counsel to file a petition on his behalf, counsel of record refused," without reference to any facts or other explanation. (Doc. 1 at 4.)  Petitioner's "conclusory suggestions that his [post-conviction] counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation."  *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (affirming district court's denial of habeas corpus relief based on its conclusion that a petitioner's "bald assertions of ineffective assistance" did not entitle him to relief).  Accordingly, Petitioner's claim alleging the ineffective assistance of PCR counsel should be denied.

///

///

1    **III.    Federal Habeas Corpus Review**

2        **A.    Exhaustion**

3        Ordinarily, a federal court may not grant a petition for writ of habeas corpus

4    unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To

5    exhaust state remedies, a petitioner must afford the state courts the opportunity to rule

6    upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

7    court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

8    ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly

9    present' his claim in each appropriate state court  .  .  .  thereby alerting that court to the

10   federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).  "A

11   claim has been 'fairly presented' if the petitioner has described both the operative facts

12   and the federal legal theory on which his claim is based."  *Baldwin*, 541 U.S. at 33.  A

13   "state prisoner does not 'fairly present' a claim to a state court if that court must read

14   beyond a petition or brief . . . that does not alert it to the presence of a federal claim in

15   order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 31-

16   32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of

17   satisfying the exhaustion requirement if he presents the claim: (1) to the proper

18   forum, . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and

19   legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)

20   (internal citations omitted).

21       **B.    Procedural Bar**

22       The requirement that a petitioner exhaust available state court remedies promotes

23   comity by ensuring that the state courts have the first opportunity to address alleged

24   violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178

25   (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also

26   require federal courts to respect state procedural bars to review of a habeas petitioner's

27   claims.  *See Coleman*, 501 at 731-32.  Pursuant to these principles, a habeas petitioner's

28   claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

1      **C.     Cause and Prejudice**

2          However, because the doctrine of procedural default is based on comity, not

3  jurisdiction, federal courts retain the power to consider the merits of procedurally

4  defaulted claims.  *See Reed v. Ross*, 468 U.S. 1, 9 (1984).  Generally, a federal court will

5  not review the merits of a procedurally defaulted claim unless a petitioner demonstrates

6  "cause" for the failure to properly exhaust the claim in state court and "prejudice" from

7  the alleged constitutional violation, or shows that a "fundamental miscarriage of justice"

8  would result if the claim were not heard on the merits.  *Coleman*, 501 U.S. at 750.

9  Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless

10  claims regardless of whether the claim was properly exhausted in state court.  *See Rhines*

11  *v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court

12  to allow claims to be raised in state court if they are subject to dismissal under

13  § 2254(b)(2) as "plainly meritless").

14  **IV.    Ground One(a) — Ineffective Assistance of Trial Counsel**

15          In Ground One(a), Petitioner argues that trial counsel was ineffective for failing to

16  adequately advise him regarding his no contest plea.  (Doc. 1 at 4.)  Petitioner presented

17  this claim to the trial court and to the court of appeals on post-conviction review.

18  (Doc. 7, Exs. K, O.)  Accordingly, as Respondents state in their Answer (Doc. 7 at 7),

19  Petitioner properly exhausted this claim, *see Baldwin*, 541 U.S. at 29, and the Court will

20  consider the merits of this claim.

21      **A.     Federal Review for Claim Adjudicated in State Court**

22          If a habeas petition includes a claim that was "adjudicated on the merits in State

23  court proceedings," federal court review is limited by § 2254(d).  Under § 2254(d)(1), a

24  federal court cannot grant habeas relief unless the petitioner shows: (1) that the state

25  court's decision "was contrary to" federal law as clearly established in the holdings of the

26  United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __

27  U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of"

28  such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the

facts" in light of the record before the state court.  28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011).  This standard is "difficult to meet." *Richter*, 131 S. Ct. at 786.  It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at 44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination." *Id.*

When a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue had a

1  "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

2  *Abrahamson*, 507 U.S. 619, 631 (1993).

3      Here, because the pending habeas petition alleges ineffective assistance of counsel

4  under *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* prejudice standard

5  applies and the court does not engage in a separate analysis applying the *Brecht* standard.

6  *See Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*,

7  211 F.3d 1148, 1154 n.2 (9th Cir. 2000) (stating that the court "need not conduct

8  harmless error review of *Strickland* violations under *Brecht* . . . because '[t]he; *Strickland*

9  prejudice analysis is complete in itself; there is no place for additional harmless-error

10  review.")).

11      **B.**    **Petitioner's Ineffective Assistance of Counsel Claim**

12      In Ground One(a), Petitioner asserts that trial counsel was ineffective because she

13  gave "substandard advice concerning plea [and the] sentencing guidelines."  (Doc. 1 at

14  6.)  On post-conviction review, the appellate court affirmed the trial court's rejection of

15  this claim and found that Petitioner "fail[ed] to set forth in detail how counsel coerced

16  him to accept a plea agreement . . . ." (Doc. 7, Ex. Q at 3.)  The appellate court also noted

17  that the transcript from the change-of-plea hearing showed that, in response to the trial

18  court's questions, Petitioner stated that he understood the change-of-plea proceedings.

19  (*Id.*) Thus, the appellate court found that Petitioner "ha[d] done nothing more than

20  engage in unsupported speculation and attempt to contradict the record," and affirmed the

21  trial court's denial of post-conviction relief.  (*Id.* at 3-4.)

22      As discussed below, Petitioner has not shown that the state court's decision is

23  based on an unreasonable determination of the facts, or that it is contrary to or an

24  unreasonable application of federal law.  28 U.S.C. § 2254(d).  Accordingly, he is not

25  entitled to relief on his claim of ineffective assistance of counsel.

26      **1.**    **Standards to Establish Ineffective Assistance of Counsel**

27      The controlling Supreme Court precedent on claims of ineffective assistance of

28  counsel is *Strickland v. Washington,* 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is extremely limited. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

To establish a Sixth Amendment violation, a petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Id*. at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one. *See Strickland*, 466 U.S. at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688.)

The negotiation of a plea bargain is "'a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.'" *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1406 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. ___ 356, ___, (2010)). If counsel has misadvised a defendant about the law during a plea negotiation, or improperly coerced a defendant to accept a plea bargain, counsel's performance may be found deficient. *See Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) (counsel's erroneous legal advice about possibility of conviction that

led to rejection of plea offer constituted deficient performance).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  *Id.* at 1387.

To satisfy *Strickland's* prejudice prong when a petitioner has pleaded guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (citations omitted).  To show that prejudice resulted from the ineffective assistance of counsel "where a plea offer has lapsed or been rejected because of counsel's deficient performance, [a petitioner] must demonstrate a reasonable probability" that (1) he "would have accepted the earlier plea offer," and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."  *Frye*, 132 S. Ct. at 1409.

### 2.     Petitioner's Conclusory Claim Fails

Here, Petitioner asserts his ineffective assistance of trial counsel claim in a single sentence, without stating any supporting facts.  (Doc. 1 at 4.)  Specifically, Petitioner alleges that trial counsel gave "substandard advice concerning plea, sentencing guidelines and prejudice."  (Doc. 1 at 4.)  Petitioner does not describe counsel's allegedly "substandard advice," explain how that advice pertained to the "sentencing guidelines," or explain how he was prejudiced as a result of counsel's alleged deficient performance.  (*Id.*)  As the state court found, Petitioner's unsupported "conclusory suggestions that his trial . . . counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation."  *See Jones*, 66 F.3d at 205.

Additionally, the record reflects that Petitioner understood the plea agreement, including the charges to which he pled no contest, the possible sentence, and the rights he was waiving pursuant to that plea.  The written plea agreement provided that Petitioner was pleading no contest to second degree murder and that the potential sentence for this offense ranged from  presumptive sentence of sixteen years' imprisonment, a minimum

of ten years' imprisonment, and a maximum of twenty-two years' imprisonment. (Doc. 7, Ex. C at 1.)   It also stated that the parties stipulated to a twenty-two year sentence.   (*Id.*)   In exchange for Petitioner's plea, the State agreed to dismiss the other charges in the indictment.   (*Id.*)   Petitioner initialed each paragraph of the plea agreement indicating that he had "read and understood" the provisions of the plea agreement.   (*Id.* at 1, 3.)

Petitioner also initialed a paragraph specifically confirming that he had read and understood the plea agreement, discussed his case and his rights with counsel, counsel had explained the nature of the charges and the elements of the crime to which he was pleading, he understood the rights he was waiving by pleading no contest, and he agreed to enter the plea pursuant to the terms of the plea agreement.   (*Id.* at 2.)   Petitioner's trial counsel also signed the agreement, avowing that she "discussed this case with [Petitioner] in detail and advised him of his constitutional rights and all possible defenses.   [She] also explained the nature of the charge(s) and the elements of the crime(s).   [And she] believe[d] that the plea and disposition set forth herein [were] appropriate under the facts of this case. . . ."   (*Id.* at 3.)

At the change-of-plea hearing, the court first questioned Petitioner — through an interpreter — whether he had taken any drugs or medication.   (Doc. 7, Ex. U at 3-4.) Petitioner responded that he taken medication that was prescribed for him and that he felt "fine."   (*Id.*)   In response to the court's further questions, Petitioner acknowledged that although he did not read or understand English, the plea agreement was read to him in Spanish, he signed and initialed the plea agreement, he understood the plea agreement, he had discussed the plea agreement with counsel, and there was nothing in the plea agreement that he did not understand.   (*Id.* at 5-7.)

Petitioner also stated that he agreed to everything in the plea agreement, willingly signed the plea agreement, and was not forced or threatened to do so.   (*Id.* at 7-8.) In addition, Petitioner indicated that he was aware of the sentencing range applicable to the

offense to which he was pleading, and understood that the agreement stipulated to an aggravated twenty-two-year prison sentence.  (*Id.* at 8-9.)  Petitioner next affirmed that he understood the constitutional rights he was waiving by entering a no contest plea, including the right to remain silent, the privilege against self-incrimination, the right to refuse to testify, the right to a jury trial, the right to question witnesses, the right to call witnesses and present evidence, the right to testify, the right to have a jury determine his guilt and any aggravating sentencing factors beyond a reasonable doubt, and the right to appeal.  (*Id.* at 11-13.)

After answering the trial court's questions, Petitioner pleaded no contest to second degree murder.  (*Id.* at 13-14, 18-21.)  Defense counsel agreed that it was "in the best interest of justice" for the trial court to accept the plea "[b]ecause it sentences him to a term of years and he does not risk the death penalty which he would risk if he went to trial."  (*Id.* at 21.)  Petitioner indicated that he had no questions he wanted to ask the trial court or counsel, and that he had "fully understood everything" that was addressed during the change of plea proceeding.  (*Id.* at 22.)  Finally, the trial court found that the plea was "knowingly, intelligently, and voluntarily made" and there was a factual basis for his plea.  (*Id.* at 22-23.)

Petitioner's sentencing hearing occurred two months later.  (Doc. 7, Ex. V.)  At the outset of the hearing, the trial court told Petitioner, [i]f during the course of our conversation you have any questions, please stop and ask those questions, okay?"  (*Id.* at 4.)  Petitioner did not ask any questions, and answered affirmatively when asked if he wanted the court to accept his no contest plea.  (*Id.* at 5.)  The court then sentenced Petitioner to twenty-two years' imprisonment in accordance with the plea agreement.  (*Id.* at 16.)

Considering the record, Petitioner has not met his burden of establishing that trial counsel's alleged "substandard advice" regarding the plea agreement and "sentencing guidelines" amounted to deficient performance or that he was prejudiced by the alleged deficiency.  Accordingly, he is not entitled to habeas corpus relief on Ground One(a)

1    **V.      Ground Two — Invalid Waiver of Jury Trial**

2           **A.      Ground Two was not Properly Exhausted**

3           In Ground Two, Petitioner asserts that his waiver of his right to a jury trial was not

4    knowing, voluntary, or intelligent and therefore violated the Sixth and Fourteenth

5    Amendments.[3]  (Doc. 1 at 5.)  Although Petitioner argued on post-conviction review that

6    his agreement to plead no contest plea was based on the ineffective assistance of counsel

7    (Doc. 7, Ex. O at 4-6, 8-12), he did not raise an independent claim arguing that he did not

8    knowingly, intelligently, or voluntarily waive his right to a jury trial.  (*Id.*)  Petitioner's

9    claim that trial counsel was ineffective with respect to the no contest plea did not fairly

10   present an independent claim challenging Petitioner's waiver of his right to a jury trial.

11   *See Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) (petitioner's claim that

12   counsel was ineffective for failing to raise a Fifth Amendment violation did not fairly

13   present the underlying Fifth Amendment claim).  Because Petitioner did not raise the

14   Sixth and Fourteenth Amendment claim asserted in Ground Two to the trial court and to

15   the court of appeals, Ground Two is unexhausted.  *See Castillo*, 399 F.3d at 998 n.3.

16          **B.      Ground Two is Procedurally Barred**

17          Petitioner did not exhaust available state remedies with respect to his claims

18   asserted in Grounds Two and, as discussed below, a return to state court to present those

19   claims would be futile because Arizona's procedural rules would bar presentation of

20   these claims.   Accordingly, Ground Two is technically exhausted and procedurally

21   defaulted.  *See Coleman*, 501 U.S. at 732, 735 n.1.

22          First, Rule 32.4(a) requires a defendant who pleaded guilty to file a notice of post-

23   conviction relief "within ninety days of the entry of judgment and sentence or within

24   thirty days after the issuance of the final order or mandate by the appellate court in the

---

25          [3]  Ground Two also asserts a violation of the Arizona Constitution.  (Doc. 1 at 5.)

26   Only claims which allege a violation of the federal Constitution, laws, or treaties are
     cognizable on federal habeas corpus review.   *See* 28 U.S.C. § 2254(a); *Estelle v.*

27   *McGuire*, 502 U.S. 62, 67 68 (1991).   Thus, an alleged violation of the Arizona
     Constitution is not cognizable on habeas corpus review and that claim should be denied.

28

petitioner's first post-conviction proceeding."  Here, the court of appeals issued its mandate in the post-conviction proceedings on June 28, 2013.  (Doc. 11, Ex. I.)  Thus, the thirty-day deadline for filing a second post-conviction proceeding expired on July 29, 2013.  *See* Ariz. R. Crim. P. 1.3(a).  Accordingly, Rule 32.4(a) would bar Petitioner from returning to the state court to assert Ground Two in a post-conviction proceeding.

Second, Rule 32.2(a)(3) precludes post-conviction relief upon any ground "that has been waived at trial, on appeal, or in any previous collateral proceeding."  Petitioner waived the claims asserted in Ground Two by failing to raise them in his first post-conviction proceeding.  *See State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009) (stating that "[r]ule 32.2(a) precludes collateral relief on a ground that either was or could have been raised on direct appeal or in a previous PCR proceeding.").

The application of these rules does not depend on an interpretation of federal law; these rules are regularly and consistently followed and, therefore, would bar any future attempt to exhaust Petitioner's claims asserted in Ground Two in state court.  *See Stewart*, 536 U.S. at 861 (holding that Arizona Rules of Criminal Procedure concerning preclusion are an adequate and independent procedural bar preventing federal habeas relief); *Poland v. Stewart*, 169 F.3d 573, 577-78 (9th Cir. 1999) (Arizona's procedural rules are "consistently and regularly followed and are adequate to bar federal review."); *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (concluding that Ariz. R. Crim. P. 32.2 was an adequate and independent procedural bar).

Because Petitioner cannot return to state court to exhaust the claims asserted in Ground Two, those claims are technically exhausted and barred from federal habeas corpus review.  *See Teague*, 489 U.S. at 297-99 (claim was procedurally defaulted where it was "clear that collateral relief would be unavailable to [the] petitioner" if he returned to the state courts); *McKinney v. Ryan*, 730 F.3d 903, 914 (9th Cir. 2013) (Arizona prisoner's unexhausted claim was procedurally barred because he would be barred from raising it in state court pursuant to Rules 32.2(a) and 32.4); *Beaty*, 303 F.3d at 987 ("If

1    [petitioner] has any unexhausted claims, he has procedurally defaulted them, because he

2    is now time-barred under Arizona law from going back to state court.").

3         Because Ground Two is procedurally defaulted, it is not subject to federal habeas

4    corpus review unless Petitioner establishes a "fundamental miscarriage of justice" or

5    "cause and prejudice" to overcome the procedural bar.  *See Coleman*, 501 U.S. at 749-50;

6    *Teague*, 489 U.S. at 297-98.  As discussed below, Petitioner has not established either

7    basis to excuse the procedural default of Ground Two and allow federal habeas corpus

8    review.

9         **C.      Fundamental Miscarriage of Justice**

10        A federal court may review the merits of a procedurally defaulted claim if the

11   petitioner demonstrates that failure to consider the merits of that claim will result in a

12   "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

13   "fundamental miscarriage of justice" occurs when "'a constitutional violation has

14   probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray*

15   *v. Carrier*, 477 U.S. 478, 496 (1986)).

16        To establish a fundamental miscarriage of justice, a petitioner must present "new

17   reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness

18   accounts, or critical physical evidence — that was not presented at trial."  *Schlup*, 513

19   U.S. at 324.  The petitioner has the burden of demonstrating that "it is more likely than

20   not that no reasonable juror would have convicted him in light of the new evidence."  *Id.*

21   at 327.  Petitioner does not argue that failure to consider his defaulted claims will result

22   in a fundamental miscarriage of justice.  (Doc. 1.)  Accordingly, this exception does not

23   excuse the procedural bar.

24        **D.      Cause and Prejudice**

25        A federal court may review the merits of a procedurally defaulted claim if a

26   petitioner establishes "cause" and "prejudice."  *Coleman*, 501 U.S. at 750.  To establish

27   "cause," a petitioner must establish that some objective factor external to the defense

28   impeded his efforts to comply with the state's procedural rules.  *Teague*, 489 U.S. at 298.

A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray*, 477 U.S. at 488.

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

### 1. Lack of Legal Knowledge, Resources, and Assistance do not Establish Cause

Liberally construing the Petition, Petitioner asserts as cause for his procedural default that he lacks legal knowledge and resources, and that he had to rely on a "non-Spanish speaking paralegal" to file his "motions."[4] (Doc. 1 at 11.) Petitioner's lack of legal knowledge, status as an inmate, and limited legal resources do not constitute cause to excuse the procedural bar. *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause); *Hughes v. Idaho State Bd. of Corrs.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance was not cause to excuse a procedural default).

_____

[4] Petitioner does not directly address the issue of cause and prejudice to overcome a procedural bar. Rather, in a section entitled "Timeliness of Petition," Petitioner refers to the ineffective assistance of counsel, the State of Arizona's "impeding his ability to be timely in filing motions," and to his reliance on a non-Spanish speaking paralegal to file his motions. (Doc. 1 at 7.) Liberally construed, these assertions address the issue of cause and prejudice.

Additionally, his lack of access to a Spanish-speaking paralegal does not constitute cause.  Even assuming Petitioner cannot read English and legal resources in his native language were unavailable to him, those circumstances do not establish cause for his procedural default.  *See Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988) (finding that a lack of familiarity with "the American language and court system do not constitute cause . . . ."); *see also Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (stating that "unfamiliarity with the English language is insufficient to establish cause to excuse [a petitioner's] procedural default because [it] is not 'external to [petitioner's] defense.'") (quoting *Murray v. Carrier*, 477 U.S. 487, 488 (1986)).   Moreover, Petitioner's pro se filings in his state proceedings and in this Court demonstrate his ability to file pleadings despite his alleged lack of Spanish-language legal resources.  *See Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (finding that the petitioner did not establish "cause" when he did not show personal deprivation of access to legal materials and was able to file other adequate petitions, despite allegations of inadequate resources).

## 2. The State's Alleged Interference does not Establish Cause

Petitioner further argues "cause" based on the State of Arizona "impeding his ability to timely file his motions."  (Doc. 1 at 11.)  Petitioner, however, does not identify any motion that was untimely or the manner in which the "State of Arizona" impeded his ability to timely file "motions."  (*Id.*)  Although interference by prison officials may constitute cause to excuse a procedural default, Petitioner's conlcusory allegations are not sufficient to establish that the State of Arizona or any state actor interfered with his ability to present his defaulted claims to the state courts.  *See Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (stating that "[w]here a pro se prisoner attempts to deliver his petition [to prison officials] for mailing in sufficient time for it to arrive timely in the normal course of events, the [prison mailbox] rule [established in *Houston v. Lack*, 487 U.S. 266 (1988)] is sufficient to excuse a procedural default based upon a late filing.").  Accordingly, the alleged interference by the "State of Arizona" does not constitute cause to excuse the procedural bar to Petitioner's claims asserted in Ground Two.

### 3.  Ineffective Assistance of PCR Counsel does not Establish Cause

Liberally construing the Petition, Petitioner also argues that the ineffectiveness of PCR counsel constitutes cause for his failure to exhaust Ground Two.  (Doc. 1 at 2 (alleging that PCR counsel refused to file a petition).)  Generally, any errors of counsel during the post-conviction proceedings cannot serve as a basis for cause to excuse a petitioner's procedural default of other claims.  *See Coleman*, 501 U.S. at 752.  However, in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1315 (2012), the Supreme Court established a limited exception to this general rule.  The Court held that the ineffective assistance of post-conviction counsel "at initial-review collateral review proceedings" — while not stating a constitutional claim itself — may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when a post-conviction proceeding represents the first opportunity under state law for a petitioner to litigate such claims.  *Id.* at 1315. "Cause" is established under *Martinez* when:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral review proceeding.

*Trevino v. Thaler*, __ U.S.__, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21).  In *Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013), the Ninth Circuit held that "the *Martinez* standard for cause applies to all Sixth Amendment ineffective-assistance claims, both to trial and appellate, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding."

Because the *Martinez* cause standard applies only to defaulted claims of ineffective assistance of counsel, it does not apply to Petitioner's claims in Ground Two in which he challenging his waiver of a jury trial.  Accordingly, Petitioner has not established cause for the procedural default of Ground Two and the Court need not address the prejudice component. *Engle v. Isaac*, 456 U.S. 127, 134 n.43 (1982)  (stating

1    that although both "cause" and "prejudice" must be shown to excuse a procedural default,

2    a court need not examine the existence of prejudice if petitioner fails to establish cause).

3        **E.    Petitioner's Waiver of a Jury Trial was Valid**

4        As set forth above, Petitioner's claim in Ground Two should be denied as

5    procedurally defaulted.    Alternatively, this claim lacks merit because the record

6    establishes that Petitioner's no contest plea, including his waiver of a jury trial, was valid.

7    *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied

8    on the merits, notwithstanding the failure of the applicant to exhaust the remedies

9    available in the courts of the State.").

10       To satisfy due process, guilty pleas must be voluntary, "knowing, [and] intelligent

11   acts done with sufficient awareness of the relevant circumstances and likely

12   consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Bradshaw v.*

13   *Stumpf*, 545 U.S. 175, 183 (2005).  A plea is voluntary if the defendant is "fully aware of

14   the consequences, including the actual value of any commitments made to him by the

15   court, the prosecutor, or his own counsel," and if the plea is not the result of threats,

16   misrepresentations, or improper promises to the defendant.  *Brady*, 397 U.S. at 755.  To

17   determine whether a plea was voluntary, the court must consider all relevant surrounding

18   circumstances.  *Id.* at 749.  A plea is intelligent if the defendant has been advised by

19   competent counsel and made aware of the charges against him, and is not "incompetent

20   or otherwise not in control of his mental faculties."  *Id.* at 756.

21       While Petitioner contends that his waiver of his right a jury trial, contained in his

22   no-contest plea, was involuntary and unintelligent, his representations at the plea hearing,

23   and the findings made by the trial court accepting the plea, constitute a "formidable

24   barrier in [this] subsequent collateral proceeding[]."  *Blackledge v. Allison*, 431 U.S. 63,

25   73-74 (1977).  The plea agreement specifically provided that, by pleading no contest,

26   Petitioner was "waiving and giving up his right to . . . a trial by jury to determine guilt

27   and to determine any fact used to impose a sentence with the range stated above in

28   paragraph one, to confront and cross-examine, compel the attendance of witnesses, to

present evidence in my behalf, my right to remain silent, my privilege against incrimination, [and the] presumption of innocence . . . ."  (Doc. 7, Ex. C at 2.)  Plaintiff initialed the paragraph that discussed the waiver of his right to a jury trial and signed the plea agreement.  (*Id.* at 2-3.)  As set forth section IV.B.2, the record of the underlying criminal proceeding establishes that Petitioner's no contest plea, including his waiver of his right to a jury trial, was knowing, voluntary, and intelligent.  By signing the written plea agreement and initialing its specific terms, Petitioner acknowledged that he understood the plea agreement's terms, including the charge to which he was pleading no contest and the applicable sentencing range, the charges the government agreed to dismiss, the sentence he would receive if the trial court accepted the plea, and the rights he was foregoing by pleading no contest, including his right to a jury trial.  (Doc. 7, Ex. C.)

At the change-of-plea hearing, Petitioner indicated that he was properly medicated and could understand the proceedings and his responses to the trial court's questions confirm that he understood the proceedings.  (Doc. 7, Ex. U at 3-9, 11-14, 18-22.)  Petitioner also affirmed that the plea agreement was explained to him and that he fully understood it.  (*Id.* at 5-13, 18-23.)  Petitioner stated that he understood that he was "giving up his right to a jury trial where he would be represented by [his] attorneys."  (*Id.* at 11-12.)  He also affirmed that he was waiving his "constitutional rights" to remain silent, his privilege against self-incrimination, his rights to testify and to refuse to testify, his right to call witnesses and present evidence, his right to question the State's witnesses, his right to have the jury determine his guilt beyond a reasonable doubt, and his right to have the jury determine any sentencing factors beyond a reasonable doubt.  (*Id.* at 11-12.)  He agreed that the government would produce evidence that would establish his guilt beyond a reasonable doubt if he proceeded to trial.  (*Id.* at 18-23.)  Furthermore, Petitioner stated that he willingly signed the plea agreement and that it was not the result of force or threats.  (*Id.* at 7-8.)  At the conclusion of the hearing, Petitioner stated that he understood the change-of-plea proceeding and that he had no questions.  (*Id.* at 22.)

1    Similarly, at the sentencing hearing Petitioner indicated that he understood the
2    proceedings and, although the court advised him that he could ask questions, Petitioner
3    did not ask the court or counsel any questions.  (Doc. 7, Ex. V at 4.)

4           Petitioner's initials and signature on the plea agreement, and his statements at the
5    change-of-plea and sentencing hearings demonstrate the knowing, voluntary, and
6    intelligent nature of his no contest plea — including the waiver of his right to a jury trial
7    — and the trial court's factual determination that Petitioner entered the plea freely and
8    voluntarily is entitled to deference.  *See* 28 U.S.C. § 2254(e)(1).  Additionally, Petitioner
9    does not allege that any "promises or threats" deprived his plea "of the character of a
10   voluntary act."  *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995) (citations
11   omitted).

12          Petitioner's entire argument in Ground Two consists of the statement that
13   "Petitioner did not knowingly make a knowing, voluntary, intelligent waiver of
14   fundamental constitutional rights the right to a jury trial is a fundamental right secured to
15   all persons accused of a crime."  (Doc. 1 at 5.)  However, other than his self-serving
16   allegation, Petitioner does not provide any facts or details to support this conclusory
17   assertion.  "Conclusory allegations which are not supported by a statement of specific
18   facts do not warrant habeas relief."  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)
19   (citation omitted).

20          In summary, the record demonstrates that Petitioner knowingly, voluntarily, and
21   intelligently entered a plea of no contest, *see Brady*, 397 U.S. 742, and his "cursory and
22   vague claim cannot support habeas relief."  *Greenway v. Schriro*, 653 F.3d 790, 804 (9th
23   Cir. 2011) (affirming denial of claim of ineffective assistance of counsel based on the
24   petitioner's failure to allege specific facts to support his claim).  Accordingly, Petitioner
25   is not entitled to habeas corpus relief based on Ground Two.

26   **VI.    Conclusion**

27          For the reasons above, the Petition for Writ of Habeas Corpus should be denied
28   because Petitioner's claims are not cognizable on federal habeas corpus review (Ground

One(b)), are procedurally barred (Ground Two), or lack merit (Grounds One(a) and (b), and Ground Two).

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of Ground Two is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right in Grounds One or Two.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 30th day of June, 2014.

Bridget S. Bade
United States Magistrate Judge